UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL REYES,<br>*Plaintiff*,<br><br>v.<br><br>IC SYSTEM, INC.,<br>*Defendant*. | No. 3:19-cv-01206 (JAM) |

**ORDER DENYING MOTION TO DISMISS**

The Fair Debt Collection Practices Act ("FDCPA") provides in relevant part that a debt collector may not use false, deceptive, or misleading representations or means to attempt to collect a debt. *See* 15 U.S.C. § 1692e. This case asks how this provision of the FDCPA applies when a debt collector, here defendant IC System, Inc. ("ICS"), reports a second collection attempt on a delinquent debt to a credit reporting agency. I previously dismissed Reyes' "bare-bones" complaint for failing to state a claim, with leave to re-plead. *See Reyes v. IC Sys., Inc.*, 2019 WL 6497002 (D. Conn. 2019) ("*Reyes I*"). Reyes duly filed a more detailed complaint, Doc. #19, which ICS has moved to dismiss, Doc. #20. Reyes' complaint redresses the deficiencies identified in my prior ruling, and I conclude that it now states a claim under the FDCPA. I will accordingly deny ICS's motion to dismiss.

**BACKGROUND**

The following facts are taken from Reyes' amended complaint. Reyes "allegedly became delinquent" on a $254 personal cable bill with DirecTV at some point before March 2018. Doc. #19 at 3 (¶ 11). In March 2018, a credit entry was placed on Reyes' credit report by a company named Receivables Performance Management ("RPM"), and this entry listed a $254 debt due to RPM under account number 5858****, the amount corresponding with the DirecTV debt. *Id.* at 3 (¶ 12).

1

In February 2019, nearly a year later, ICS placed its own entry on Reyes' credit report for the same $254 debt but used a different account number, 9598****, without clarifying that this entry represented an attempt to collect the same debt previously being collected by RPM. *Id*. at 3 (¶ 13). This led at least one credit reporting agency to report Reyes as having two entirely different debts, one from RPM and one from ICS, each for $254. ICS's action led Reyes' credit report to state, incorrectly, that Reyes was delinquent on two debts when he was only delinquent on one, and that he had twice the amount of delinquent debt than was truly the case. *Id.* at 4 (¶ 23). These inaccuracies lowered Reyes' credit score, causing it to fall below what it would have been had ICS accurately reported its second collection attempt as what it was, and not as a tradeline on an ostensibly new delinquent debt. *Id*. at 3 (¶¶ 15-17).

Reyes alleges that "[b]y failing to make it clear that ICS [was] seeking to collect the same debt as RPM . . . ICS chose to further the false and deceptive reporting and prevent the credit report from accurately reflecting Plaintiff's true credit worthiness." *Id*. at 4 (¶ 19). ICS knew from DirectTV that it was not the first debt collector assigned to collect this debt, and ICS used its credit reporting practices to inflict twice the harm on Reyes in order to incentivize his payment. *Id.* at 3-4 (¶ 18). Reyes' credit report, now containing a large number of negative items as a result of ICS's duplicative entry, led Reyes' employer to deny him a promotion and demote him. *Id*. at 4 (¶ 22).

The amended complaint contains just one count: violation of the FDCPA. *Id*. at 5. But it cites six subsections of the FDCPA that ICS is alleged to have violated by its misleadingly duplicative reporting:

- 15 U.S.C. § 1692e(2)(A) (barring "the false representation of—(A) the character, amount, or legal status of any debt");

- 15 U.S.C. § 1692e(8) (barring the "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed");
- 15 U.S.C. § 1692e(9) (barring "[t]he use or distribution of any written communication which . . . creates a false impression as to its source, authorization, or approval");
- 15 U.S.C. § 1692e(10) (barring "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer");
- 15 U.S.C. § 1692f (generally barring the "use [of] unfair or unconscionable means to collect or attempt to collect any debt"); and,
- 15 U.S.C. § 1692d (generally barring "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt").

I dismissed Reyes' original complaint for failing to state "that ICS's report was misleading to its only recipient—the credit reporting agency—or led to a false statement in the resulting credit report," noting as I did so that Reyes did "not allege whether it was ICS or the other debt collector who first reported the debt to the credit reporting agency," and that this omission was "fatal" to Reyes's claim. *Reyes I*, 2019 WL 6497002, at *2.

Reyes' amended complaint redresses both of these deficiencies on its face—it makes a great many allegations describing the ways in which the ICS report was deceptive, and it alleges that ICS was the second reporter (and that it did nothing to alert anyone that it was trying to collect the same debt as a prior collector). ICS has nonetheless moved to dismiss, arguing that even with these additions, the complaint fails to state a claim. Doc. #20.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a

3

sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court need not accept allegations that couch legal conclusions in the form of factual allegations or that are otherwise conclusory. *See Hernandez*, 939 F.3d at 198. In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to decide if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a facially plausible claim for relief.

### *FDCPA misrepresentation claims (15 U.S.C. § 1692e)*

The FDCPA provides in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It goes on to list numerous examples of prohibited conduct, including among others "the false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10); *see generally Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015).

Because the FDCPA is primarily a consumer protection statute, a court must construe its terms liberally to achieve the statute's purpose. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016). When evaluating whether a statement made by a debt collector is misleading or deceptive, a court applies the "least sophisticated consumer" standard to decide if the statement is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Ibid*. If it is, the statement violates the FDCPA. *Ibid*. *See also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020).

The cases on which ICS relies establish in general that "debt collectors do not violate the FDCPA when they report a debt, even if another entity has already made a credit bureau report about the same debt." *Macias v. Credit Control, LLC*, 2017 WL 2619145, at *3 (N.D. Ill. 2017)

(citing *Kohut v. Trans Union LLC*, 2004 WL 1882239, at *2 (N.D. Ill. 2004)); *see also Frierson v. States Recovery Sys.*, 2017 WL 2546889, at *2-3 (E.D. Cal. 2017); *Gustafson v. Experian Info. Sols. Inc.*, 2015 WL 3477071, at *8 (C.D. Cal. 2015). This makes sense. The reporting of a debt that is already reflected on a credit report is not deceptive so long as the second report does not mislead about whether it is collecting the same debt as the previous reported debt.

The problem for ICS, however, is that Reyes has now alleged that ICS did *not* tell the credit reporting agency that it was a second collector for the debt already reported by RPM. Instead, by using a new account number and not providing any comment or other explanation that it was a follow-up debt collector on a pre-existing debt, it led the credit reporting agency to believe that ICS was opening a tradeline on a *new* debt with a *new* account number, making it appear that Reyes' was delinquent on two debts rather than one, and had twice the overall indebtedness than was in fact the case.

The new account number is the keystone of Reyes' claim that ICS engaged in misleading and unfair conduct. Discovery might reveal that second tradelines, despite bearing new account numbers, carry with them information that permits the least sophisticated consumer to infer that they are second collections of a prior debt. But Reyes' complaint, which I must construe in his favor at this stage, clearly alleges that the least sophisticated consumer, either by reading the communique from ICS to the credit agencies or by reading the credit agencies' report to the world, would conclude that Reyes had two debts when in fact he had one. These critical facts distinguish both *Kohut* and *Gustafson* where the complaints alleged the reporting of a second tradeline without describing affirmative misrepresentations that would make the least sophisticated consumer believe the defendants were collecting a new debt. *See Kohut*, 2004 WL 1882239, at *2; *Gustafson*, 2015 WL 3477071, at *8.

Here, ICS's use of a different account number for what was really a second collection attempt on an already-reported delinquent debt, without clarification or other notation, made it essentially impossible for even a savvy reader to know that Reyes had only $254 in one delinquent debt and not $508 in two delinquent debts. For initial pleading purposes, this satisfies section 1692e(2)(A)'s description of a "false representation of the character . . . of any debt," as well as section 1692e(10)'s description of "deceptive means to collect or attempt to collect any debt." *See Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004) (denying summary judgment for debt collector who double-reported for same debt from two different office locations under two separate account numbers); *see also Cook v. Mountain Am. Fed. Credit Union*, 2018 WL 3707922, at *4 (D. Ariz. 2018) (noting that "it is plausible that the double reporting of plaintiff's debt would mislead and adversely affect credit decisions" in the context of interpreting the Fair Credit Reporting Act).

ICS gestures to the argument that, because the ultimate harm Reyes experienced came from his employer's interpretation of an inaccurate credit report, he can seek relief only under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. But that a credit reporting agency may be liable for misreporting information furnished to it does not diminish ICS's own liability for sending that agency a false or misleading report.

Indeed, it is telling that while the FCRA imposes relatively limited duties on a very broad class of "furnishers" of information to a credit reporting agency, *see* 15 U.S.C. § 1681s-2, the FDCPA imposes far stricter duties on the narrow class of entities classified as debt collectors, *see* 15 U.S.C. § 1692a(6). The relationship between the two statutes is clear: Congress wanted to retain a separate penalty for *debt collectors* engaging in inaccurate "furnishing" (well aware of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by

6

many debt collectors," 15 U.S.C. § 1692(a)), while not imposing similar burdens on the wide range of other enterprises that "furnish" information to credit reporting agencies and who have not exhibited nearly the same tendency towards abusive practices. *See Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 172 (E.D.N.Y. 2013) (holding that misrepresentations made to a credit reporting agency "fall comfortably within the plain language of the FDCPA," and "nothing in the [FCRA] or the case law suggests that the FCRA provides the exclusive remedy for misrepresentations to a credit reporting agency").[1]

ICS's final argument is that Reyes' claims are implausible, although it articulates this argument in terms that trade polemic for persuasion. *See* Doc. #26 at 2-3 (describing claims as "patently baseless," "fantasy," "spurious," and "ludicrous"). Far from a "fantasy," Reyes' allegations are all too plausible. "[T]hreatening to report and reporting debts to credit reporting agencies is one of the most commonly-used arrows in the debt collector's quiver." *Williams v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 1582515, at *11 (D. Conn. 2018).

Reyes' situation illustrates just how effective this tactic is: to be delinquent for one debt might be regarded as an oversight or misfortune; to default on two looks more like a pattern of neglect or even a struggle with solvency. ICS could have made the successive nature of its collection efforts clear to credit reporting agencies—but why would it do so voluntarily? An accurate report would require effort and expense from ICS, and, perhaps worse from its perspective, *lower* the pressure on the debtor to repay. It was just to correct this lack of incentive

---

[1] ICS oddly relies on a consent order (reported in Tennessee City Court five years ago, *State ex rel. Slatery*, 2015 Tenn. Cir. LEXIS 2116) to argue that the Fair Credit Reporting Act's provisions are exclusive of the FDCPA. But the consent agreement is (1) voluntary, (2) agreed to about 40 years after Congress passed the FCRA and FDCPA, and (3) irrelevant to the actual allegations in this complaint, pled as they are against a debt collector and not a credit reporting agency.

to engage in scrupulously honest debt communication that led Congress to pass the FDCPA in the first place. *See* 15 U.S.C. § 1692(e) (purposes of statute).

The mechanism Congress used to accomplish this alteration of incentives was strict liability, so to the extent that the complaint alleges malice, the veracity of that claim can be readily determined in discovery and is in any event not a fact necessary to state an FDCPA claim. *See Bentley v. Great Lakes Collection Bureau, Inc*., 6 F.3d 60, 63 (2d Cir. 1993) (the FDCPA "is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages"). Reyes has amply stated a claim under 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10).

### *Other FDCPA claims*

Although Reyes' complaint includes only a single count, that count alleges—as an alternative basis for liability—that ICS's allegedly deceptive double-reporting violates other subsections of 15 U.S.C. § 1692e, as well as 15 U.S.C. § 1692d (barring "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt") and 15 U.S.C. § 1692f (barring "unfair or unconscionable means to collect or attempt to collect any debt"). This kind of pleading in the alternative is perfectly permissible under Rule 8(d)(2) of the Federal Rules of Civil Procedure, but given that it appears that discovery in this case would proceed in precisely the same manner whether I were to accept or reject Reyes' remaining claims in the alternative, I will leave consideration of these alternative bases of liability to summary judgment, pre-trial motions *in limine*, or requests for jury instructions if necessary.

*Compulsory joinder*

ICS additionally argues that the credit reporting agencies who reported Reyes' debts are indispensable parties and that this action must be dismissed under Fed. R. Civ. P. 12(b)(7) for failure of Reyes to join these indispensable parties. "Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a). . . . If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000) (Sotomayor, J.).

ICS makes only one argument that the credit reporting agencies are indispensable parties: "[i]t is industry custom and practice for a [credit reporting agency] to delete, following a request form a debt collector, a negative tradeline on a consumer's credit report." Doc. #21 at 6. I reject ICS's argument for three reasons.

First, ICS provides no citation for this alleged "industry custom and practice." It is "the general rule that a court considering whether an absent person's interest in the litigation is sufficient to satisfy the first sentence of Rule 19(a) must base its decision on the pleadings as they appear at the time of the proposed joinder." *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990). Here, ICS has not only failed to point to anything in the pleadings supporting its claim, but to any evidence at all for its assertion. I cannot determine the indispensability of a party on the strength of a party's citation-free speculations in a memorandum of law on a motion to dismiss.

9

Second, even if I were to take ICS on faith and disregard basic rules of motion practice, it is entirely unclear (and unexplained) why this "industry custom and practice" prevents me from "accord[ing] complete relief among existing parties," Fed. R. Civ. P. 19, or that any credit reporting agency has "claim[ed] an interest relating to the subject of the action," *ibid*. Based on the allegations in the complaint, the agencies appear to be wholly unnecessary to this action.

If ICS sent complete and accurate information to a credit reporting agency (*i.e.*, if discovery reveals that the complaint is wrong) and it was one or more agencies that misrepresented Reyes' credit score, then Reyes simply loses this suit against ICS. If ICS sent an *inaccurate* report to a credit reporting agency, then what an agency did with that information (or what ICS did to correct any mistake in its report after it was detected) is surely relevant to this matter but hardly renders the agency liable *to Reyes* on the facts alleged because credit reporting agencies are not debt collectors and do not have FDCPA liability—the sole claim in the complaint.

In the same way, ICS fails to explain how any credit reporting agencies are prejudiced by ICS being held liable for a breach of the FDCPA except in the very vague sense that a precedent might be set that debt collectors were not permitted to misrepresent the nature of the debts they collect to credit reporting agencies, which might have the indirect effect of increasing somewhat the complexity of reports sent to agencies and thus agency report processing time. This is hardly the kind of "serious impairment" to a definable third-party interest as to render the party "necessary." *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc*., 471 F.3d 377, 386-87 (2d Cir. 2006).

To be sure, if Reyes had demanded as an equitable remedy that a credit reporting agency change his credit score to correct for ICS's allegedly misrepresented report, the agency would be

a "necessary" party. *See, e.g.*, *Associated Dry Goods*, 920 F.2d at 1124 (non-party landlord "necessary" because an effective injunction required it to facilitate the additional electricity sought by the plaintiff). Here, however, all Reyes wants from ICS is "statutory and actual damages, costs, and attorneys' fees." Doc. #19 at 7. ICS can surely pay such sums without the assistance of any credit reporting agencies.

Third, even if the credit reporting agencies were "necessary" parties in this action, ICS provides no reason to suppose that it would be infeasible to join them in this action. Nor does ICS devote any attention in its cursory briefing on joinder to the four factors under Rule 19(b) that I must consider before determining whether I must, in "equity and good conscience," dismiss the litigation. *See* Fed. R. Civ. P. 19(b); *see generally Shields v. Barrow*, 58 U.S. 130, 139 (1854).

## CONCLUSION

For the reasons set forth above, I conclude that plaintiff Reyes has plausibly alleged that defendant ICS used a false, misleading, or deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10). I further conclude that the action should not be dismissed for failure of Reyes to join any credit reporting agency as an indispensable party. Accordingly, defendant ICS's motion to dismiss (Doc. #20) is DENIED. It is so ordered.

Dated at New Haven this 29th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge